UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE L. DYE,                                  Case No. 14-11252

          Plaintiff,                       Matthew F. Leitman
v.                                             United States District Judge

CITY OF ROSEVILLE, et al.,                     Michael Hluchaniuk
                                               United States Magistrate Judge

          Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS (Dkt. 13)**

## I.   PROCEDURAL HISTORY

Plaintiff filed a *pro se* civil rights complaint against defendants on March 26, 2014. (Dkt. 1). On April 3, 2014, this matter was referred to the undersigned for all pretrial proceedings. (Dkt. 4). On May 1, 2014, defendants filed a motion to dismiss the complaint for failure to state a claim on which relief may be granted. (Dkt. 13). Plaintiff filed his response to the motion on May 8, 2014. (Dkt. 15). On May 19, 2014, defendants filed a reply. (Dkt. 16). This matter is now ready for report and recommendation

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED**.

## II.   PLAINTIFF'S COMPLAINT

According to the complaint, plaintiff was charged with Domestic Violence 2nd Offenses on May 3, 2013.  (Dkt. 1, Ex. A).  After being given notice for a warrant for his arrest by the Roseville Police Department on May 9, 2013, plaintiff turned himself in to the Roseville Court and was given a personal bond.  (Dkt. 1, ¶ 2).  On leaving the Roseville Court, plaintiff went to the Roseville Police Department to be fingerprinted and speak with lead Detective Sergeant Witherspoon.  (Dkt. 1, ¶ 3).  According to the complaint, Detective Sergeant Witherspoon told plaintiff that he wanted to hear his side of the story.  (Dkt. 1, ¶ 4).  On Monday, May 13, 2013, plaintiff turned in an evidence package, which included a nine page written statement about his ex-wife and a four page statement about his son.  (Dkt. 1, ¶ 5).  Plaintiff also alleges that he included in the evidence packet letters of recommendation, letters that he was attending counseling at the VA Hospital in Ann Arbor, a letter of recommendation from Officer Biddle of the Detroit Police Child Abuse Unit, and a document from the 36th District Court stating that a Domestic Violence charge involving his ex-wife was dismissed with prejudice in September of 1998.  (Dkt. 1, ¶ 6).  According to the complaint, the dismissal of the domestic violence charge did not go into the file that was given to the prosecution because it was removed from the evidence packet submitted. (Dkt. 1, ¶ 8, Ex. B).

2

While at a pre-trial hearing on Wednesday, May 29, 2013, plaintiff alleges that he spoke with Detective Witherspoon and told him he wanted to submit exculpatory evidence in his defense to Det. Sgt. Witherspoon.  Witherspoon's reply was "my part in the investigation is over, turn in any evidence to your attorney."  (Dkt. 1, ¶ 10).  On July 13, 2013, plaintiff sent Witherspoon an email describing his knowledge about the Brady Rule.  (Dkt. 1, ¶ 11, Ex. C).  Plaintiff then contacted Macomb County Chief Investigator Craig Keith with the issue and sent him a letter along with the paperwork for the dismissed domestic violence charge.  (Dkt. 1, ¶ 12, Ex. D).  The complaint alleges that Macomb County Chief Investigator Craig Keith contacted plaintiff on July 18, 2013, and informed him that the matter would be corrected at the next pre-trial hearing.  (Dkt. 1, ¶ 13).  According to plaintiff, Investigator Craig Keith also informed him that Prosecutor Servitto had been removed from the case for inappropriate conduct and that a new prosecutor had been appointed.  (Dkt. 1, ¶ 14).

On the same day, Witherspoon contacted plaintiff and said he would accept any exculpatory evidence plaintiff had in his possession.  (Dkt. 1, ¶ 15).  At that time, plaintiff sent Witherspoon transcripts and a flash drive of a conversation that one of the complainants in the domestic violence case had with Yolanda Patrick, a witness in the domestic violence case, about how his mother had beaten up his father and that his mother lied because his father did not hit her.  (Dkt. 1, ¶ 16).

The complainant said his mother overreacted.  (Dkt. 1, ¶ 17).  This evidence was sent through the United States Post Service certified mail.  (Dkt. 1, ¶ 18).  The evidence was signed for by Ashley Nikou of the Roseville Police Department. (Dkt. 1, ¶ 19, Ex. E).

On July 19, 2013 plaintiff sent Witherspoon an email asking for investigative assistance locating witnesses involved in the case that had contact with the complainants.  (Dkt. 1, ¶ 20, Ex. F).  On July 20, 2013, plaintiff emailed Witherspoon a letter bringing to his attention the case involving *Moore v. Hartman*, No. 0805370, 2009 U.S. App. Lexis 14942 (D.C. Cir 2009), involving a malicious prosecution lawsuit in federal court.  (Dkt. 1, ¶ 21, Ex. G).  On contacting Witherspoon somewhere around August 5, 2013, he informed plaintiff, per Chief Berlin, that he could no longer speak to plaintiff and that plaintiff would have to speak with Assistant Police Chief.  (Dkt. 1, ¶ 22).  On Friday August 9, 2013 at 7:45am, plaintiff contacted Berlin and informed him that Witherspoon had been tampering with evidence and plaintiff wanted to discuss the matter with him. (Dkt. 1, ¶ 23).  Berlin contacted plaintiff on Friday August 9, 2013, and informed plaintiff that he did not want to talk to him at all.  (Dkt. 1, ¶ 24).

The complaint next alleges that plaintiff received discovery from Kelly Jex in the Discovery Division of the Macomb County Prosecutor's Officer on January 2, 2014.  (Dkt. 1, ¶ 25).  According to plaintiff, the exculpatory evidence sent to

Witherspoon through the U.S. Postal Service was missing and excluded  (Dkt. 1, ¶ 26), and the prosecutor did not have it in her possession.  (Dkt. 1, ¶ 27, Ex. H). Plaintiff then contacted Investigator Craig Keith again and his response was, "it is not my responsibility to do anything."  (Dkt. 1, ¶ 28).  Plaintiff then attempted to contact the Macomb County Prosecutor.  (Dkt. 1, ¶ 29).  Plaintiff spoke with Gloria in the prosecutor's office on January 6, 2014 at 10:00 am.  (Dkt. 1, ¶¶ 30-31).  Plaintiff attempted to speak with Gloria and was told she no longer worked in the prosecutor's office.  (Dkt. 1, ¶ 32).  Plaintiff then contends that he attempted to speak with Macomb County Prosecutor Eric Smith, but he would not answer or speak with plaintiff.  (Dkt. 1, ¶ 33).  On January 3, 2014, plaintiff attempted to get discovery from the prosecutor's officer and was told by Assistant Prosecutor John Paul Hunt that even though plaintiff was indigent, he was not allowed to get discovery.  (Dkt. 1, ¶ 34).

Based on the foregoing facts, plaintiff asserts several claims in his complaint.  First, he alleges violations of his Fourth and Fourteenth Amendment rights by malicious and selective prosecution.  (Dkt. 1, Count I).  Second, plaintiff makes a claim for "Intentional Spoliation of Evidence."  (Dkt. 1, Count II). According to plaintiff, defendants intentionally tampered with evidence. Witherspoon was the lead investigator and was responsible for maintaining custody of all evidence and forwarding it to the prosecutor.  Plaintiff also alleges

5

that Chief Berlin had a duty to investigate the allegation of evidence tampering by Witherspoon. Instead, Berlin ignored the evidence of misconduct and directed Witherspoon to cease communications with plaintiff.

In Count III, Negligent Hiring, Training, Supervision and Retention against the City of Roseville, plaintiff contends that the Roseville Police Department, through its supervisory employees, negligently failed to properly train and supervise Witherspoon in Fourth and Fourteenth Amendment rights and procedures and negligently retained him even though it knew that he was violating plaintiff's constitutional rights. Plaintiff met with Berlin on several occasions to complain about the conduct of his officers. Plaintiff also recounts a meeting with Berlin and the Roseville City Manager about a "racial incident" with Officer McCann (not a party to this lawsuit) who later left the department under allegations of "placing death threats on the home of the plaintiff." Plaintiff further explains that the officer had a court date with plaintiff but quit the department and refused to come to court; the matter was dismissed with prejudice in April 2013.

Lastly, in Count IV of the complaint, plaintiff asserts a claim for a violation of the Michigan Tort Claims Act, contending that all of his claims are covered under this action and defendants committed the above-described torts. Based on these claims, plaintiff alleges that he was injured and requests general and special damages, medical damages, costs and attorney fees, and punitive damages.

## III.    PARTIES' ARGUMENTS

### A.    <u>Defendants' Motion to Dismiss</u>

Defendants first argue that plaintiff's Count I, "malicious and selective prosecution" fails to state a claim.  According to defendants, it appears that plaintiff's complaint is that the police knew or should have known that the first domestic violence charge concluded in a finding of not guilty.  But, defendants argue, even if that is true, at best, that merely renders the "second offense" portion of the domestic violence charge questionable, not the underlying charge itself. Defendants also find fault with plaintiff's apparent contention that the exculpatory evidence provided was conclusively exculpatory.  They contend that, as a matter of law, it was not.  Rather, it consisted of a document about plaintiff's prior conviction, a variety of "self-serving character references" and a flash drive of conversations between two individuals.  Defendants maintain that this evidence does not constitute irrefutable proof of plaintiff's innocence and thus, the institution or continuation of the prosecution after receipt of this evidence does not constitute malicious prosecution.

Defendants also argue that plaintiff's malicious prosecution claim fails to meet the pleading standard set forth in Rule 8(a) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Not only does his complaint fail to address the elements of such a claim, but he merely makes legal conclusions based on implausible assumptions.

According to defendants, taken together, the complaint only states a claim that is "consistent with" liability for one or more defendants, but they "stop short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Defendants also contend that the malicious prosecution claim against Berlin must be dismissed for an additional reason. According to defendants, plaintiff has not met his burden that Berlin, through his own individual actions, violated the constitution. Plaintiff does not even allege that Berlin knew about or saw the alleged exculpatory evidence. And, defendants assert that plaintiff has not sufficiently pleaded this claim against the City of Roseville because it is merely based on the theory of respondeat superior. Finally, to the extent that plaintiff asserts a claim based on selective enforcement, defendants contend that he has failed to assert even the most rudimentary elements of that claim. *Wynn v. City of Pulaski*, 2013 WL 527154 (M.D. Tenn. 2013).

Defendants also claim that plaintiff has failed to state a claim for spoliation of evidence. First, defendants assert that plaintiff's assertion that such evidence was "tampered" with is a naked assertion unsupported by further factual development and a mere label and conclusion based on implausible speculation. In addition, defendants argue that neither federal nor Michigan law recognize any independent cause of action for spoliation of evidence. *See Cummerlander v.*

*Patriot Preparatory Academy*, 2013 WL 5969727 (S.D. Ohio 2013) ("there is no free-standing tort claim for spoliation under federal common law."); *Panich v. Iron Wood Products Corp.*, 179 Mich.App. 136 (1989) ("The tort of spoliation is not available in Michigan."); *Gill v. Locricchio*, 2006 WL 891463 (E.D. Mich. 2006) ("Michigan law does not recognize spoliation and destruction of evidence as a cause of action.").  Thus, defendants request dismissal of this claim

As to plaintiff's negligent hiring, supervision, and retention claim, defendants contend that this claim is legally deficient because plaintiff failed to allege facts in support of his claim.  Further, defendants contend that this is nothing more than another claim of vicarious liability, which is barred by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  Defendants assert that plaintiff's claim is a mere formulaic recitation of legal conclusions without any supporting facts, and the only facts cited in Count III involve circumstances and people not at issue in this case.

As to plaintiff's claim under the "Michigan Tort Claims Act," defendants point out that no such statute exists.  Defendants contend that alleging a cause of action under a non-existent statute is exactly the type of claim for which Rule 12(b)(6) is designed to provide relief.

B.   Plaintiff's Response

Plaintiff argues that the factual allegations contained in his complaint are

9

not conclusions or assumptions.  Rather, they are "facts that were documented throughout the duration of the domestic violence case."  Plaintiff also points out that if a complaint contains well-pleaded allegations, courts will assume their veracity and decide whether they plausibly give an entitlement to relief.

Plaintiff asserts that the actions of defendants were illegal and intended to violate his constitutional rights.  Therefore, plaintiff contends that qualified immunity cannot be granted because "it does not survive the legal standard used to qualify the defendants for this alternative defense."  (Dkt. 15).  Further, plaintiff says defendants acted under color of law to deny him rights guaranteed by the Fourteenth Amendment.  Witherspoon was continuously contacted by plaintiff to inform him of his wrongdoing and this was intentionally ignored to pursue "this egregious end against the plaintiff."  (Dkt. 15).  Plaintiff maintains that defendants broke the law to intentionally inflict harm on him.

C.    Defendant's Reply

In reply, defendants observe that plaintiff's response fails to address any of the arguments regarding why plaintiff's complaint fails to state a claim on which relief may be granted.  Otherwise, plaintiff's brief appears to respond to a motion that defendants did not file; one based on the defense of qualified immunity.  Defendants also point out that plaintiff's lengthy statement of facts is not supported by any citation to the record or supporting evidence.

10

## IV.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

11

relief.").  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted).  The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed

12

"from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.). However, "[a]s has been recognized by our circuit and others, despite liberal pleading requirements for pro se litigants, it is not the role of the court to guess the nature of the claim(s) asserted." *Agee v. Wells Fargo Bank*, 2010 WL 1981047, *2 (E.D. Mich. 2010), citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Nuclear Transportation & Storage, Inc. v. United States*, 890 F.2d 1348 (6th Cir. 1989); *Chapman v. City of Detroit*, 808 F.2d 459 (6th Cir.1986).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs*., 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  B.    Malicious/Selective Prosecution

While plaintiff does not expressly address any of the arguments addressed by defendants in their motion to dismiss and appears to argue only about whether defendants are entitled to qualified immunity (an issue not raised in the motion to

13

dismiss), the undersigned will endeavor to address the substance of the claims raised by plaintiff in the complaint, rather than recommending dismissal based solely on plaintiff's failure to provide a substantive response. A malicious prosecution claim under Michigan common law has four elements: 1) a defendant has initiated a criminal prosecution against a plaintiff; 2) the criminal proceeding terminated in plaintiff's favor; 3) the private person (defendant) who instituted or maintained the prosecution lacked probable cause for the action; and 4) the action was undertaken with malice or a purpose of instituting the criminal claim other than bringing the offender (plaintiff) to justice. *Walsh v. Taylor*, 263 Mich.App. 618, 632-33; 689 N.W.2d 506 (2004). Plaintiff's complaint contains no allegations regarding the last three elements of this claim. Even construing his complaint liberally, plaintiff does not claim that the criminal proceeding terminated in his favor, that there was no probable cause for the criminal proceeding, or the criminal proceedings were undertaken for a purpose other than bringing him to justice. For these reasons, plaintiff's state law malicious prosecution claim fails under Rule 12(b)(6).

To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, plaintiff must satisfy four

elements.[1]  First, he must show that a criminal prosecution was initiated against him and that defendants "made, influenced, or participated in the decision to prosecute." *Sykes v. Anderson*, 625 F.3d 294, 308-10 (6th Cir. 2010).  Second, because a § 1983 claim is premised on the violation of a constitutional right, plaintiff must show that there was a lack of probable cause for the criminal prosecution.  *Id*.  Third, plaintiff must show that, "as a consequence of a legal proceeding," he suffered a "deprivation of liberty," as understood in Fourth Amendment jurisprudence, apart from the initial seizure.  *Id*.  Fourth, the criminal proceeding must have been resolved in his favor.  *Id*.  Again, plaintiff's complaint contains no allegations that there was a lack of probable cause for his arrest, or that he suffered any deprivation of liberty other than the initial seizure or arrest. And, the complaint does not state that the criminal proceedings were resolved in his favor.  Thus, plaintiff's malicious prosecution claim under § 1983 also fails as a matter of law.

As to plaintiff's selective enforcement claim, he offers no allegations to

---

[1]  Plaintiff also brings his malicious prosecution claim under the Fourteenth Amendment. However, as explained in *Tiger v. Pynkala*, 2014 WL 5502405, at *10 (W.D. Tenn. 2014), the Supreme Court held in *Albright v. Oliver*, 510 U.S. 266, 275 (1994), that the Fourteenth Amendment's Due Process Clause "may not give rise to a federal constitutional malicious prosecution claim."  Indeed, the Fourth Amendment, which governs "deprivations of liberty that go hand in hand with criminal prosecutions ... must be the guide for analyzing [malicious prosecution] claims."  *Tiger*, at *10, quoting *Albright*, at 273-74.  *See also Spurlock v. Satterfield*, 167 F.3d 995, 1005-1007 (6th Cir. 1999) (malicious prosecution of an individual without probable cause violates rights afforded by the Fourth Amendment); *Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003).

support this claim.  A claimant alleging selective enforcement of facially neutral criminal laws must demonstrate that the challenged law enforcement practice "had a discriminatory effect and that it was motivated by a discriminatory purpose." *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002), citing *Wayte v. United States*, 470 U.S. 598, 608 (1985); *see also Abdul-Khaliq v. City of Newark*, 275 Fed.Appx. 517, 521-22 (6th Cir. 2008).  In this case, plaintiff has not alleged that he was treated differently than someone to whom he was similarly situated, as is required for a selective-enforcement claim based on race.  *See Abdul-Khaliq*, 275 Fed.Appx. at 521.  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."  *Farm Labor*, 308 F.3d at 534, quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *see also Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) ("In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor was treated differently.").  Other than a reference to a "racial incident" involving an entirely different circumstance and an officer who is not a party to this action, nothing in plaintiff's complaint supports a claim for selective enforcement based on race or any other class protected under the Equal Protection clause.  Thus, this claim too must be dismissed.

C.   <u>Spoliation of Evidence</u>

As defendants point out, it is well-established that neither Michigan nor federal law permit independent causes of action arising out of an alleged spoliation of evidence. *Bailey v. Trust Logistics*, 2014 WL 1317502, at *3 (E.D. Mich. 2014), citing *Teel v. Meredith*, 284 Mich.App. 660, 663; 774 N.W.2d 527 (2009); *Bray v. Unified Prop. Grp., LLC*, 2012 WL 5363792, at *4 (E.D. Mich. 2012). Thus, plaintiff's claim in this regard fails as a matter of law and should be dismissed.[2]

D.   <u>Negligent Hiring, Training, Retention and Supervision</u>

It is well-settled law that a governmental entity, such as the City of Roseville,[3] cannot be held vicariously liable under 42 U.S.C. § 1983 for the acts or

---

[2] It is worth noting that it does not appear that evidence was actually destroyed, as plaintiff seemingly has copies of all the evidence at issue. Rather, plaintiff merely claims that this evidence was not re-produced to him as part of the discovery/exculpatory evidence disclosures required to made by the prosecution under *Brady/Giglio*. *See Brady v. United States*, 397 U.S. 742 (1970); *Giglio v. United States*, 450 U.S. 150 (1972). Indeed, while it is clear that the government has an obligation to provide exculpatory information to a defendant in a criminal case, that principle does not apply to information of which defendant is aware. *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). While plaintiff claims that the evidence was not given to the prosecutor by defendants, nothing appears to have prevented plaintiff or his counsel from seeking to use such evidence during the criminal proceedings.

[3] In his complaint, plaintiff only makes this claim against the city. To the extent that his complaint could be read to include this claim against Chief Berlin, as defendant Witherspoon's supervisor, such claim also fails. A supervisory official's awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is generally insufficient to trigger § 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). It is generally true that where a defendant's "only role[] ... involve[s] the ... failure to act ... [he or she] cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

omissions of its employees. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (plaintiff cannot premise the liability of a corporate defendant on the theory of *respondeat superior*). Rather, to hold the city liable under § 1983, plaintiff is required to come forward with evidence that an unconstitutional policy, custom or practice was the proximate cause of his injuries. *Monell*, 436 U.S. at 694; *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir. 1993) (recognizing that a private corporation may be held liable under § 1983 when acting under color of law). And, "liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). "Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy." *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 Fed. Appx. 621, 636 (6th Cir. 2012) (internal quotation marks omitted).

A failure-to-train claim requires a showing of "'prior instances of unconstitutional conduct demonstrating that the [contractor] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010);

see also *Hamer v. Cnty. of Kent*, 2014 WL 1276563, at *6 (W.D. Mich. 2014)

("Put another way, the mere failure to train employees, standing alone, is not

actionable under section 1983.").  Plaintiff thus must point to more than "an

isolated, one-time event" to prove the city had a policy of inadequate training.  *See*

*Jackson v. Wilkins*, 517 Fed. Appx. 311, 321 (6th Cir. 2013), citing *Fox v. Van*

*Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999).  He must point to evidence, rather

than mere allegations, of "prior instances of unconstitutional conduct."  *Id.*, citing

*Miller*, 606 F.3d at 255.

First, as discussed above, plaintiff has failed to sufficiently allege that his

constitutional rights were violated.  Where plaintiff has not properly alleged that

there was an underlying constitutional violation, there is no basis for claiming that

the governmental entity had an unconstitutional policy.  *See Watkins v. City of*

*Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by

the individual defendants is established, the municipal defendants cannot be held

liable under § 1983."), citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799

(1986).

Second, plaintiff has failed to allege that the city acted pursuant to an

unconstitutional policy, procedure or custom.  Absent supported allegations that

city policymakers actually knew of an unconstitutional policy, custom or practice,

plaintiff is required to allege a widespread or significant practice that could

19

support a reasonable inference of constructive knowledge. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). Plaintiff generally alleges a failure to train and supervise, but he fails to meet his burden to show a preexisting pattern of constitutional violations by city employees that should have alerted the city of a need for more training or different policies, or that policy-makers knew that a failure to further train or supervise its personnel resulted in constitutional violations. Plaintiff's complaint is devoid of any references to a pattern of similar constitutional violations by untrained personnel.[4]

> E.   Michigan Tort Claims Act

As defendants point out, there is no such statute called the "Michigan Tort Claims Act."[5] Plaintiff does not respond to this argument or explain how Count IV of the complaint states a claim. Thus, in the view of the undersigned, plaintiff has failed to state a claim on which relief may be granted and Count IV should be dismissed.

## V.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

---

[4] Plaintiff's vague allegation regarding a "racial incident" involving another officer does not establish such a pattern.

[5] The undersigned was able to find one case referring to a statute with this name, but the statute cited is Mich. Comp. Laws § 691.1407, the Michigan statutory provision regarding governmental immunity. *See Chrite v. United States*, 564 F. Supp. 341, 345 n. 3 (E.D. Mich. 1983). However, plaintiff does not explain how this statute – if this is indeed the statute to which his complaint refers – would provide the basis for any independent claim against defendants.

defendants' motion to dismiss be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

21

rule without awaiting the response.

Date: November 21, 2014        s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on November 21, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Roger A. Smith , and I certify that I have mailed by United States Postal Service the foregoing paper to the following non-ECF participant(s), at the following address(es): Dwayne L. Dye, 4103 Haverhill, Detroit, MI 48224.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov